UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

COOLSYSTEMS, INC.,

    Plaintiff,

v.

NICE RECOVERY SYSTEMS LLC,

    Defendant.

Case No. 16-cv-02958-PJH

**ORDER DENYING MOTION TO DISMISS AND/OR STRIKE INEQUITABLE CONDUCT ALLEGATIONS**

Re: Dkt. No. 30

    Plaintiff's motion to dismiss defendant's unenforceability counterclaim and strike its defense of inequitable conduct came on for hearing before this court on October 5, 2016. Plaintiff CoolSystems, Inc. ("CoolSystems") appeared through its counsel, Tamara Fraizer and David Elkins. Defendant NICE Recovery Systems LLC ("NICE") appeared through its counsel, Aldo Badini. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the motion.

## BACKGROUND

    This is a patent dispute regarding medical devices to treat injury. CoolSystems and NICE market competing devices that combine compression and circulation of cold water to alleviate pain from injury and/or aid in post-operative recovery. See Compl. ¶¶ 7, 13. The technology consists of a cuff that goes over the injury, which connects to a powered reservoir of ice water that is circulated through the air-pressurized cuff—the basic idea being to apply both cold and compression at the same time. Compl. ¶¶ 7–15.

    CoolSystems' products—marketed under the name "Game Ready"—are covered by U.S. Patent 7,896,910 (the '910 patent), entitled "Modular Apparatus for Therapy of an Animate Body." Compl. ¶¶ 1, 10. CoolSystems' complaint states a single cause of action

for patent infringement, alleging that NICE's competing device, called the "NICE1", directly infringes claims 7 and 8 of the '910 patent. Compl. ¶¶ 21–28. The action was originally filed in the Distract of Delaware, and transferred to this court in May 27, 2016 by stipulation of the parties. Dkt. 9, 10.

The instant motion concerns NICE's allegations of inequitable conduct by CoolSystems in the prosecution of the '910 patent. See Dkt. 25, First Amended Answer ("FAA") ¶¶ 34–64; Counterclaims ¶¶ 15–17. The defense and counterclaim center on a prior art reference, U.S. Patent Application Pub. No. 2001/0039439 Elkins et al., known as "Elkins '439." FAA ¶ 36. Elkins was a founder of CoolSystems, and CoolSystems accordingly owned this patent application, which was abandoned during prosecution in 2003. FAA ¶¶ 36, 54. NICE characterizes Elkins '439 as an earlier and "since-abandoned attempt by the founder of the company [William Elkins] to patent essentially the same invention." FAA ¶ 62.

NICE's inequitable conduct allegations can be grouped into four different factual bases for CoolSystems' alleged fraud on the PTO. See generally FAA Counterclaims ¶ 16 (summarizing inequitable conduct allegations). The four grounds are:

1. CoolSystems "buried" Elkins '439, which was the "single most material" reference, on the 8th page of a list of 176 other "minimally relevant" references. FAA ¶¶ 35, 46, 56.

2. CoolSystems failed to name William Elkins as a co-inventor. FAA ¶¶ 41–44.

3. CoolSystems' patent prosecutor, Parul Kapur, made an affirmative false statement when she stated that claims 50 and 51 had been "rewritten in independent form including all the limitations of the base claim and any intervening claims." FAA ¶ 58 (emphasis added). In fact, claim 51—which became claim 8 in the issued patent—did not include the limitations of claim 50, an intervening claim. FAA ¶¶ 59–60.

4. CoolSystems failed to respond to the patent examiner's "Statement of Reasons for Allowance" of the '910 patent, which stated that "[n]one of the prior art of record" disclosed the invention's particular combination. FAA ¶¶ 61–62. CoolSystems "should

1  have known that the examiner's statement about the contents of the prior act was
2  glaringly incorrect" in light of Elkins '439.  FAA ¶ 62.
3  CoolSystems' motion seeks to dismiss NICE's third counterclaim and to strike its
4  sixth affirmative defense, both of which are based on the same inequitable conduct
5  allegations described above.

## DISCUSSION

**A.  Legal Standards**

  **1.  Motions to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged.  Ileto v. Glock, Inc., 349 F.3d 1191, 1199–1200 (9th Cir. 2003).  To survive a motion to dismiss for failure to state a claim, a pleading generally must satisfy only the minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

A pleading may be dismissed under Rule 12(b)(6) for failure to state a claim if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory.  Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013).  While the court is to accept as true all the factual allegations in the pleading, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009).

The allegations "must be enough to raise a right to relief above the speculative level," and a motion to dismiss should be granted if the pleading does not proffer enough facts to state a claim for relief that is plausible on its face.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558–59 (2007) (citations and quotations omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 556 U.S. at 678 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has

1  not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679.

2  When, as here, the allegations involve fraud, heightened pleading standards apply. "[T]he circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Under Rule 9(b), falsity must be pled with specificity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted). "[A]llegations of fraud must be specific enough to give [the parties] notice of the particular misconduct which is alleged to constitute the fraud charged 'so that they can defend against the charge and not just deny that they have done anything wrong.'" Sanford v. MemberWorks, Inc., 625 F.3d 550, 558 (9th Cir. 2010) (citation omitted).

### 2. Motions to Strike

Under Federal Rule of Civil Procedure 12(f), the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike under Rule 12(f) is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted). To determine whether to grant a motion to strike under Rule 12(f), the court must determine whether the matter the moving party seeks to have stricken is (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. Id. at 973-74. Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystem, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Sec. Litig., 114 F Supp. 2d 955, 965 (C.D. Cal. 2000). A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. Id.

4

### 3. The Exergen Standard for Pleading Inequitable Conduct

Whether inequitable conduct claims are plead with particularity is governed by Federal Circuit law. Cent. Admixture Pharm. Servs. v. Advanced Cardiac Solutions, P.C., 482 F.3d 1347, 1356 (Fed. Cir. 2007).

The elements of inequitable conduct are "(1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." Exergen Corp. v. Wal-Mart Stores, 575 F.3d 1312, 1327 (Fed. Cir. 2009). Under Rule 9(b), pleading inequitable conduct "requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Id. at 1327.

"[A]lthough "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO." Id. 1328–29. A reasonable inference is one that is "plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." Id. at 1329 n.5.

### B. Analysis

The court will analyze each of NICE's four bases for inequitable conduct in turn to determine whether they state a valid claim/affirmative defense for inequitable conduct that is sufficiently pled under the Exergen standard.

#### 1. The "Burying" Theory

The first basis for NICE's counterclaim is that Elkins '439, the "single most material" reference, was "buried" by the patent prosecutor among a voluminous number of minimally relevant prior art references. FAA ¶¶ 35, 46, 56. The court finds that the "who, what, when, where, and how" of this theory are sufficiently pled under Exergen.

5

The who is "at least" Kapur, and the when/where is during prosecution of the '910 patent before the PTO. The "what" is burying Elkins '439 among the other references.

The "how" goes to the issue of materiality. CoolSystems argues that "burying" a reference cannot state a claim for inequitable conduct as a matter of law because a buried reference can never be material. For this point, CoolSystems relies on the Fiskars decision, in which the Federal Circuit stated that "[a]n applicant can not be guilty of inequitable conduct if the reference was cited to the examiner, whether or not it was a ground of rejection by the examiner." Fiskars, Inc. v. Hunt Mfg. Co., 221 F.3d 1318, 1327 (Fed. Cir. 2000). However, the indications from the Federal Circuit on this issue are "contradictory." ESCO Corp. v. Cashman Equip. Co., 158 F. Supp. 3d 1051, 1062 (D. Nev. 2016); see generally Robert Brendan Taylor, Burying, 19 Mich. Telecomm. & Tech. L. Rev. 99, 110 (2012) (noting that the "mix of appellate law has led to divergent decisions in district courts"). Contrary to its statement in Fiskars, the Federal Circuit has also said that "'burying' a particularly material reference in a prior art statement containing a multiplicity of other references can be probative of bad faith." Molins PLC v. Textron, Inc., 48 F.3d 1172, 1184 (Fed. Cir. 1995),

Because Fiskars "did not deal directly with the burying question," this court concludes that, if it is supported by specific factual allegations, "burying" can state a claim for inequitable conduct. See, e.g., Nomadix, Inc. v. Hosp. Core Servs. LLC, No. CV 14-08256 DDP VBKX, 2015 WL 3948804, at *9 (C.D. Cal. June 29, 2015) (burying allegations are "nothing more than a species of the Rule 9(b) intent standard" and can state a claim); Reid–Ashman Mfg., Inc. v. Swanson Semiconductor Serv., LLC, 2007 WL 1394427, at *6–7 (N.D. Cal. May 10, 2007) (declining to strike allegations of obscuring prior art by burying it among voluminous less relevant references); but see Seaboard Int'l, Inc. v. Cameron Int'l Corp., No. 1:13-CV-00281-MLH-SK, 2013 WL 3936889, at *6 (E.D. Cal. July 30, 2013) ("[A]lleged burying of material information in a long list of citations to the PTO by itself is insufficient to state a claim for inequitable conduct.").

///

The facts in the FAA are sufficient to show that the buried reference was material. Elkins '439 was included on the eighth page of a nine-page submission with 176 other prior art references. FAA ¶¶ 46–47. In such circumstances, it is possible that the examiner did not give detailed attention to this reference, and may have reached a different conclusion if the reference was more prominently brought to his attention. Moreover, in NICE's telling—which the court must accept as true for pleading purposes—Elkins '439 was "essentially the same" invention as the '910 patent. FAA ¶ 62. NICE provides a comparison chart of the elements of the '910 patent and Elkins '439 to support this allegation. FAA ¶ 38. This is enough to "identify which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." Exergen, 575 F.3d at 1329. The FAA names all of the limitations of "claims 7 and 8" of the '910 patent as the specific claims at issue. FAA ¶ 38. NICE notes that a continuation of the '910 patent was rejected on the basis of Elkins '439, providing additional facts to support materiality. FAA ¶ 50.

Finally, NICE must plead sufficient facts from which a factfinder could reasonably infer that CoolSystems acted with a specific intent to deceive the PTO. The fact that Elkins '439 was owned by CoolSystems and that Elkins was a founder of CoolSystems provides an ample basis to infer that CoolSystems and its agent Kapur had knowledge of Elkins '439. The "buried" reference here was not some obscure foreign patent application. When the allegedly buried prior art reference was a known, material, and substantially identical invention by a company's founder, there is a sufficient factual basis from which an intent to deceive could be inferred.

Ultimately, of course, NICE's allegations will need to be proven by clear and convincing evidence. See Therasense, Inc. v. Becton, Dickinson & Co., 649 F.3d 1276, 1290 (Fed. Cir. 2011). At the pleading stage, however, the court finds that the facts alleged are sufficient to state a claim with particularity under the Exergen standard.

///

///

### 2. Failure to Disclose Inventorship

NICE's second basis for its inequitable conduct counterclaim and defense is its allegation that CoolSystems "omitted the true inventorship" by failing to disclose William Elkins as a co-inventor of the '910 patent. FAA ¶¶ 41–44. The court finds that this ground for inequitable conduct is not sufficiently pled, because it lacks any allegations of collaboration or joint behavior between Elkins and the named inventors. See Vanderbilt Univ. v. ICOS Corp., 601 F.3d 1297, 1303 (Fed. Cir. 2010) (requiring that "each co-inventor engage with the other co-inventors to contribute to a joint conception"). NICE's inventorship allegations do not appear to be based on any actual collaboration between the named inventors and Elkins. Rather, NICE alleges that CoolSystems and its patent prosecutor knew that Elkins '439 was a highly relevant prior art reference, but still omitted Elkins as an inventor of the '910 patent. FAA ¶ 39–44. But on the facts NICE alleges, Elkins was not an omitted "co-inventor," but rather the inventor of an anticipating prior art reference. Thus, to the extent that NICE's allegations of inequitable conduct rely on the theory that Elkins was a co-inventor, they fail to state a claim because there is no allegation that Elkins collaborated with the named inventors to contribute to the conception of the alleged invention. See Eli Lilly & Co. v. Aradigm Corp., 376 F.3d 1352, 1362 (Fed. Cir. 2004) ("A contribution of information in the prior art cannot give rise to joint inventorship because it is not a contribution to conception.").

### 3. The Allegedly False Statement Regarding Amendment

NICE's third basis for inequitable conduct is an alleged "materially false" statement made by Kapur during prosecution. The statement reads:

> Claims 50 and 51 were objected to as being dependent upon a rejected base claim, but would be allowable if rewritten in independent form including all the limitations of the base claim and any intervening claims. Therefore, Applicants have rewritten claims 50 and 51 in independent form including all the limitations of the base claim 47.

FAA ¶ 58 (emphasis added). NICE alleges that this statement was misleading because, despite the intention indicated in the first sentence above, claim 51 as amended did not include the limitations of an "intervening claim"—claim 50. FAA ¶ 59.

8

The court finds that NICE's allegations relating to Kapur's statement provides another basis for inequitable conduct that is sufficiently pled under Exergen. The allegations provide the specific who ("at least" Kapur), what (the allegedly false statement), when (during prosecution of the '910 patent) and where (in the PTO). CoolSystems argues that Kapur's statement was not actually false because claim 51 was actually amended precisely as described in the second sentence of the quote above to include "all the limitations of the base claim 47." However, this ignores the indication in the first sentence that amendment would include the limitations of intervening claims as well. Drawing all inferences in favor of the pleader, the court finds that Kapur's statement could be construed as misleading.

Materiality and intent are also sufficiently pled. Materiality is apparent from the statement itself—the examiner had objected to claims 50–51, but provided that they "would be allowable" if amended in a particular way. Construing the allegations in favor of NICE, Kapur indicated that she had complied with the examiner's suggestion regarding the amendment of claim 51 without actually doing so. This is enough to allege "but-for materiality," i.e., that claim 51 might not have issued if Kapur had not (allegedly) misled the examiner. See Therasense, 649 F.3d at 1291. As to intent, given the alleged falsity of the statement and its careful parsing, as well as all the surrounding circumstances described above, the court finds that there is a sufficient factual basis from which intent could be reasonably inferred.

### 4.   The "Failure to Respond" to the PTO's Reasons for Allowance

NICE's final basis for inequitable conduct is that CoolSystems "fail[ed] to respond" to the patent examiner's "Statement of Reasons for Allowance" of the '910 patent. FAA ¶¶ 61–63. NICE alleges that CoolSystems failed to correct the examiner's statement that "[n]one of the prior art" disclosed the invention claimed in the '910 patent. CoolSystems argues that this basis for inequitable conduct is insufficiently pled because there are no facts to establish that CoolSystems' decision not to act was done with a specific intent to deceive the PTO. Because NICE failed to address this issue in opposition, the court

finds that NICE has conceded the point.

## CONCLUSION

Since the court finds that two of NICE's factual bases state a claim for inequitable conduct and are pled with the requisite particularity, the court DENIES the motion to dismiss and strike the inequitable conduct allegations.  Although the court finds that the other two basis for inequitable conduct are not sufficiently pled, it declines to strike any of these allegations as they plausibly have bearing on issues—such as intent—relevant to the other two theories of inequitable conduct.

**IT IS SO ORDERED.**

Dated:  October 19, 2016

_____
PHYLLIS J. HAMILTON
United States District Judge